Our position regarding the adverse credibility finding in this case is that the court's position that he could not believe anything that the respondent had such a disadvantage when he was unable to amend his petition on two occasions. The I.J. in the case indicated that as an American, as a U.S. citizen, I cannot believe anything you say, which we argue overcomes the substantial deference that's afforded in I.J. in making a credibility finding. The fact that the judge pretty much cut appellant off after a nine-year delay from the point of filing a petition to the point of a hearing. The I.J.'s decision to make the determination that because the application of the incidents that occurred to him when he was just a child, 12 years old, in Guatemala, that he might have been taken out and shot. Well, let's kind of go to that. You know, obviously, I think that we could probably all agree that this is not a model of judicial good temperament, right, from the standpoint that, you know, not to say that everyone probably hasn't at some point in time become impatient with someone, but it appears that I.J. was quite disgusted with your client from the standpoint that, you know, there were comments made to the effect that he, if he left his wife and child there, what sort of man was he, and, you know, things along. So, you know, clearly, I think, you know, you've got all of that in the record. I guess the issues, you know, from the standpoint that occurred was on account of, and I see a weakness in the record on linking it, you know, what, you know, what, and also in terms of what that had to do with anything that he was cut off of. You know, you still have to link it to something political, something religious or whatever. A lot of bad things can happen, and particularly, I think, in this country, there was generally, you know, when you've got a war going on and all of this, there could be a lot of bad things on account of that would qualify. And then a couple of areas in the adverse credibility that his, he's got discrepancies between his asylum petition on his conscription into the military, and I think that there's, it's not a minor difference. It's like nine years or something along those lines. He said he went AWOL and one thing after two years, the other he's in there for, what, 11 years. And it's hard, you know, I mean, that, I think that goes to the heart of things, and it's hard to understand how you could mess up nine years. Then there's, then there's also the issue about where he claims he was cut off about talking about his uncle and his cousins being murdered, but he didn't put that in his asylum, and then he, you know, testified to it. So, you know, I guess I'm hearing your argument on some ways to say that this I.J. was so intemperate that there wasn't, you know, he couldn't get any of that out. But I'm wondering how you get past the on account of and those. Well, in terms of the on account of, the fact that he was taken into the military as a 12-year-old, according to our record, he was also beaten, given a weapon, and he was pretty much relegated to that of the fate of many youngsters around the world during, involving these political situations. That would pretty much link in the because of, he escaped from the military. He and his cousin went to Mexico. But how do we get the discrepancy of nine years there? I mean, because that's, that sort of casts doubt on the whole thing about being constricted into the military when you have a difference of nine years in those two statements. And then also, somehow, it's really not clear to me how he got this wife and child, how that all fits into being in the military for 11 years, where there's things in there that just don't fit together. I'm not aware that it was a nine-year difference in his military. It appeared that it was much less than that. He came to the U.S. at 21. He was serving both with the military and with the guerrillas. His asylum application states he served in the Civil Patrol from 1982 to 1993. And his testimony indicates that he is in his cousin's state in Mexico for six years and that they returned to their town in 1992 on rumors of peace in the area. He also, at another point in the record, he says that he went AWOL after two years. So how do you put all that together? There is a discrepancy, and that may be the reason that an amended petition would be so essential in cases where there are differences, discrepancies. But on two occasions, he was denied an opportunity to amend his petition that may have shed light on these discrepancies. Well, may have. Is there anything in the record that shows what he would have amended it to state? Well, he would have amended it to that which he testified. Is there anything in the record that shows what he would have done to amend it? Right. His testimony at the hearing is what's created this dispute. Had he been able to amend his petition prior to the hearing, there's an argument that these discrepancies would have been worked out. In the moment of the hearing, we're talking about a totally different mindset of question and answer, whereas with that petition, during the amendment process, it's a much more relaxed environment. These issues can be brought to light, whereas when you're in front of Let me go back to Judge Callahan's question. I'm still having a hard time finding a political opinion in here. He doesn't like the guerrillas. Apparently they're conscripting people, but I've read Elias Zacharias again, and it seems the simple fact of being conscripted and being chased around by guerrillas in and of itself doesn't compel a conclusion that that was for a person's political position or opinion. All he says is, I was living there and the guerrillas came after me. They were coming after a lot of people. What was his political opinion? He never tells us what it was one way or another. Well, his political opinion would have been indicated by the fact that he didn't want to be with the guerrillas. He didn't want to serve with the guerrillas for political reasons. You have to have persecution for political reasons. Have you read Elias Zacharias lately? Yes, Your Honor. Well, you know what that says. How is this different from that? Well, this is different, again, because in the instant case, had he been able to amend his petition, our argument is that he could have included his political basis and could have given a full statement of the basis of his persecution. He was denied that opportunity, whereas the mere act of being conscripted into service, again. But he still could have testified to that. He didn't testify to it at the hearing. That's right. And again, that goes back to the chicken before the egg. When you're in that hearing in front of that judge, you're in a question-answer format, and you may or may not cover those bases that will close those gaps, that will enhance your credibility. Well, the amendment process isn't the purpose of it isn't to make things congruent so that people can't be liable for perjury. That's not the purpose of an amendment. I mean, the purpose of an amendment is otherwise, and that's what I'm sort of hearing you say, that if he had been allowed to amend, then he would have felt freer to say what he wanted to say. But that in and of itself still wouldn't have freed him from his original asylum, what he had to say. You still have to deal with any consistent or inconsistent statements that you've made previously. And that's correct, Your Honor. Perhaps it's more of a theoretical argument that in order to afford that individual who's testifying a full and fair hearing, they have to be afforded some liberal notion of amend your petition at some point so that we're clear of where you're coming from. But in this particular case, it appears that whatever this appellant had said, since it involved the notion of being shot here in the U.S., that this particular judge would not believe anything that he said. Well, let me just read you part of Elias Zacharias. I don't want to beat this dead horse, but Justice Scalia says, presented by this case is whether a guerrilla organization's attempt to coerce a person into performing military service necessarily constitutes persecution on account of political opinion. And the answer by the Supreme Court is no. I don't see any distinction between this set of facts and the set of facts in Elias Zacharias. Well, Your Honor, in the instant case, we're talking about a 12-year-old who's constricted. And in Zacharias, I don't recall the age of the party, but I believe he was older than. That's a distinction without any difference at all. It seems that a 12-year-old would be a lot less likely to have a political opinion than an 18-year-old, for example. I mean, it seems to operate against your position, not help you. Show me a difference between this case and Elias Zacharias that's material, that makes a difference. We used to do this. We used to say if a guerrilla organization comes down and grabs you and forcibly conscripts you, that can constitute persecution on the grounds of political opinion. And the Supreme Court slapped us down and said, no, there has to be more than just guerrillas grabbing you and making you do something you don't want to do. So I'm sympathetic to your client's position, but I don't see how we get out from underneath the Supreme Court's mandate. Well, the fact that in this case, our petitioner was not only taken in by the guerrilla forces, he was also beaten, and that's a beaten because he would not change his political affiliation. Now, where does it say that on the record? Well, in the record regarding the beaten. No, beating because he would not change his political affiliation. That's the on account of because he would not change his political affiliation. Well, actually, that is not in the record. Okay. Thank you. Your time has expired. We'll still give you a minute for rebuttal. I will submit that. Next, we'll hear from the Attorney General. May it please the Court, John Enquist for the government. Your Honors, in this immigration case, the Board of Immigration Appeals and the immigration judge correctly determined that changed country conditions, excuse me, correctly determined that the petitioner is not entitled to asylum because substantial evidence in the record supports the immigration judge's adverse credibility finding and the government's established by preponderance of the evidence that changed country conditions in Guatemala negate a well-founded fear of persecution. There's, you know, I think what makes this a little harder to sort of get to the issues are it is somewhat poisoned with that I.J. really doesn't like this man and makes statements on the record, you know, that probably, you know, the fact that he isn't taking care of his children, you know, probably isn't good enough, you know. You know, maybe you could say it in a way, say, well, I find it hard to believe that all of those things occurred, if you would feel it would be safe to leave your wife and children there, as opposed to, you know, what kind of man are you if you would do something like that. Do you agree that sometimes, you know, that there were instances where the I.J. probably didn't need to cut this petitioner off? There were comments by the I.J. that perhaps should not have been there. It's important to note that the Board of Immigration Appeals specifically accepted some of those from their affirmance of the I.J.'s opinion. So, for example, there was, well, the Board of Immigration did not take the I.J.'s opinion in full, basically getting rid of some of these comments. But beyond whether or not the immigration judge cut off the petitioner, there was an adverse credibility finding in this case. What was it based on, according to the I.J.? According to the I.J., the adverse credibility is based upon three omissions and discrepancies that were key in this case. And where in his decision did the I.J. specify them? Well, on page two, in the first full paragraph, the immigration judge speaks about the change in the petitioner's story from the time that, from his asylum application when he said that he was recruited in 1982 and served in the military until 1993, and his testimony where he said that he was in the military for two years and then fled to Mexico. Is being a civil patrol member in a village starting at age 12 the same as being in the military? I mean, I've got to be honest, I don't see that necessarily as a huge discrepancy, particularly in circumstances where the I.J. wasn't exactly patient in listening to what the petitioner had to say. The specific reason given by the I.J. for, quote, I cannot believe anything the respondent says, close quote, is that, quote, this story is so abhorrent to me as a judge and primarily as an American citizen, close quote, which seems to me is a tough justification for an adverse credibility determination. Wouldn't you say? I mean, is that a good reason for an adverse credibility decision, that the story is abhorrent to me as an American citizen? He just doesn't like this guy very much. He might not like the person. That is not the sole basis, and that is not the basis. But that's what he cites. I mean, immigration judges, when they make adverse credibility determinations, because it's a pretty hostile case law from this court, a lot of which I have problems with, but we tell people, you know, cite what it is that justifies the adverse credibility determination. And mostly what I get from this I.J. is I find you abhorrent. The I.J. says that. That is part of the I.J.'s decision. That is not the full I.J.'s decision, and that is actually not the part of the I.J.'s decision that has been brought up to this court. The Board of Immigration Appeals did not affirm the decision in whole. What the BIA didn't do is specify what it based its adverse credibility determination on. It simply adopted the I.J.'s decision under Barbaro, excising what they described as inappropriate commentary. But it didn't cite specifics as to what it was that justified an adverse credibility determination. But by affirming the immigration judge's opinion, it adopts those findings. But the only ‑‑ that's the only sentence where the I.J. says specifically what he bases his feeling, that I can't believe anything you say because it's abhorrent to me as an American citizen. So to slice that out, all you've got is the conclusion. I cannot believe anything the Respondent states without any clear tethering to what it is that's based on. I would submit, Your Honor, that the comments on page 2 depict a lack of ‑‑ his findings of why he found it not credible. Now, he does not come out and say it right there. He sums it up on page 3. But that is part of the basis for why he found the petitioner to be not credible, and that part was affirmed. Your basic problem is that the hearing that the I.J. gave to this petitioner really fails to comport with basic standards of civility. I mean, a guy is entitled to a hearing, and the I.J. treated this petitioner pretty badly. Secondly, the report that the I.J. came out with isn't all that well written, and it doesn't get down to brass tacks. I think the only thing that might save you is if we look at the record itself, there's nothing that links this to political persecution. But the hearing itself was not good at all. I don't think the Department of Justice or the Department of Homeland Security would hold this up for a second as a model of the way that a hearing ought to be conducted in a case like this. It kind of strikes me as ridiculous for the BIA simply to say, well, we don't subscribe to the bad comments made by this I.J. I mean, there should have been something more than that. I mean, are you pleased, as a government representative, trying to uphold and support the way this hearing was conducted? The issue is not whether it was conducted properly. The issue is whether or not he was afforded his due process and that the I.J. made the proper determinations. And the determinations in the I.J.'s opinion do go beyond a couple of the sentences that are here. There is a clear statement or a somewhat clear statement on page three in which the immigration judge talks about the change in country conditions in Guatemala. The changed country conditions in Guatemala, which the government proved by preponderance of the evidence. Well, but let's, when we go to that, let's, okay, there are, let's assume that you get to that point. Obviously, the petitioner challenges whether you should be able to use the current or whatever. But let's go beyond that and say that you are for purposes of this argument. Was, did the I.J. with enough specificity say, did he particularize it to this particular petitioner? Or did the I.J. just say, well, you've got family there and they're fine. That's good enough. Well, family there is something that does undercut the petitioner's claim that, of the petitioner's claim. It does also undercut. Well, but the reason was your parents are doing fine. Is that, is that a good enough, is that particularized enough to satisfy that part of it? Well, not exclusively. But that coupled with the 2002 State Department report, which details that the fighting that was occurring in Guatemala in the 1980s, that the petitioner claims to be part of, has ended. All of this coupled together shows that there are. And we have the country report and your parents are doing fine. Is that enough? Is that all there is? Considering the country report in question, that, that is sufficient here. So between the country, the changed country conditions and the adverse credibility, there are multiple reasons why the immigration judge came to this conclusion. You know, and in addition, with the, the adverse credibility finding, it's important to look further in the testimony to other issues where the petitioner's story was inaccurate or changed. In the 1994 Assam application, he had no mention of the incident in 1982 where his uncle was, was shot and he was in the house. Further, in that application, there's no mention of the incident where the petitioner and his father were locked in a church for three days. His father was deprived of food and water. So the evidence in the, in the record, in the transcript, in the, in the opinion, support the adverse credibility finding. And I'll sum up, Your Honor. The case law and statutes do not support the petitioner's, support grants in the petitioner asylum on the aforementioned grounds. For the foregoing reason, the petition for review should be denied. Thank you. Thank you. Mr. Alexander, you have a minute if you want it. I'd like to sum up with revisiting the political opinion issue. The appellant testified at the hearing that his family was invaded by guerrillas when he was 10 years old, and that his uncle and, or I believe his father were taken out. His uncle was ultimately killed. The political basis for the guerrilla conduct and persecution of this family is purely political, based on the fact that they don't share the guerrilla's political affiliation, and that's why they're being persecuted. And as a 12-year-old, that political opinion, ideology, I believe, would be imputed to the appellant in this case. And on that, I would submit. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Trott, Clifton, Callahan.